IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| FRANCIS SCHAEFFER COX, | ) |
| #16179-006, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 17−cv−01334−JPG |
| vs. | ) |
| | ) |
| MARK INCH, | ) |
| GARY BURGESS, | ) |
| KATHY HILL, | ) |
| KATERINE SIEREVELD, | ) |
| RICHARD BLYTHE, | ) |
| and UNKNOWN MAILROOM | ) |
| EMPLOYEES ##1-3, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Francis Schaeffer Cox, an inmate who is currently incarcerated in the United States Penitentiary located in Marion, Illinois ("USP-Marion"), brings this action for deprivations of his constitutional rights by persons acting under the color of federal authority pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Agents of the Bureau of Narcotics*, 403 U.S. 388 (1971). (Doc. 1). In the Complaint, Plaintiff claims that federal officials at USP-Marion repeatedly interfered with his incoming and outgoing mail in 2017, in violation of his freedom of speech and access to the courts. (Doc. 1, pp. 24-33). He challenges the applicable prison mail regulations on their face and as applied to him. *Id*. Plaintiff seeks declaratory judgment, monetary damages, and injunctive relief.[1] (Doc. 1, p. 24; Doc. 2).

---

[1] Plaintiff originally filed this action without paying the $400.00 filing fee or filing a Motion for Leave to Proceed *in forma pauperis* ("IFP Motion"). The Clerk of Court sent Plaintiff a letter advising him of his obligation to either prepay the filing fee or file an IFP Motion. The Clerk warned Plaintiff that the case

1

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff is a federal inmate who is currently housed in the communications management unit ("CMU") at USP-Marion. He claims that federal officials at the prison routinely interfered with his mail in 2017. Plaintiff identifies the following incidents in his Complaint:

---

may be dismissed for failure to comply with this requirement. In response, Plaintiff paid the full $400.00 filing fee. (Doc. 3).

- On January 24, 2017, Defendant Mailroom Employee #3 opened, photocopied, and retained copies of legal mail that Plaintiff sent to and/or received from Alleman Law Firm, PC that was labeled "Privileged Legal Communication" and other correspondence he sent to or received from the United States District Court for the District of Colorado on or around the same date, later citing Bureau of Prisons Policy Statement ("BOP PS") 5214.02, 5265.14, and 28 CFR §§ 540.02, 18-19, and 204(b).  (Doc. 1, pp. 25, 32).

- On February 24, 2017, Defendant Siereveld would not allow Plaintiff to send 6-7 pieces of mail, later citing BOP PS 5214.02 and 28 CFR § 540.203.  (Doc. 1, pp. 24-25, 29-30).

- On March 24, 2017, Defendant Mailroom Employee #1 opened, photocopied, and retained copies of legal mail that Attorney Marc Victor addressed to Plaintiff and labeled "Privileged Legal Communication," later citing BOP PS 5214.02, 5265.14, and 28 CFR §§ 540.02, 18-19, and 204(b).  (Doc. 1, pp. 24, 28-29).

- On March 28, 2017, Defendant Mailroom Employee #2 opened, photocopied, and retained copies of legal mail that Plaintiff sent to and/or received from Uptown People's Law Center labeled "Privileged Legal Communication," later citing BOP PS 5214.02, 5265.14, and 28 CFR §§ 540.02, 18-19, and 204(b).  (Doc. 1, pp. 25, 31).

- On May 25, 2017, Defendants Burgess and Hill refused Plaintiff's request to use the institution's mail system to send a sealed letter to United States Senator Lisa Murkowski to inform her about misconduct of federal employees, later citing BOP PS 5214.02, 5265.14, and 28 CFR §§ 540.02(c), 18-19, and 204(b).  (Doc. 1, pp. 24, 27-28).

- On August 7-9, 2017, Defendant Hill and/or Blythe refused to mail Rudy Davis a letter that contained a photocopy of a letter Plaintiff separately mailed to Debora Cochran, later citing BOP PS 5214.02 and 28 CFR § 540.203.  (Doc. 1, pp. 25, 30-31).

- On August 9, 2017, Defendant Blythe refused to allow Plaintiff to mail Debora Cochran a photocopy of a letter that he previously sent to Rudy Davis, later citing BOP PS 5214.02 and 28 CFR § 540.203.  (Doc. 1, pp. 25, 30-31).

Plaintiff claims that each of these defendants violated his First and Fifth Amendment rights by interfering with his mail and his access to the courts.  He maintains that the defendants singled him out for this mistreatment in violation of his right to equal protection of the law.  He seeks monetary damages and injunctive relief against them, as well as a declaration that the following regulations are unconstitutional: BOP PS 5214.02, 5265.14, and related 28 CFR §§ 540.2, 18-19, 203(a), and 204(b) ("correspondence regulations").  (Doc. 1, p. 34).

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in Plaintiff's *pro se* Complaint (Doc. 1) into the following counts:

**Count 1 -** Bureau of Prison Regulation 5265.14 is unconstitutional on its face and as applied to Plaintiff by Defendants.

**Count 2 -** Bureau of Prison Policy Regulation 5214.02 is unconstitutional on its face and as applied to Plaintiff by Defendants.

**Count 3 -** Defendant Mailroom Employee #3 violated Plaintiff's rights under the First and/or Fifth Amendments by opening, copying, and retaining a letter Plaintiff received from Alleman Law Firm, PC and the United States District Court for the District of Colorado on or around January 24, 2017.

**Count 4 -** Defendant Siereveld violated Plaintiff's rights under the First and/or Fifth Amendments when she refused to allow Plaintiff to send 6-7 pieces of mail on February 24, 2017.

**Count 5 -** Defendant Mailroom Employee #1 violated Plaintiff's rights under the First and/or Fifth Amendments by opening, copying, and retaining a letter Plaintiff received from Attorney Victor on or around March 24, 2017.

**Count 6 -** Defendant Mailroom Employee #2 violated Plaintiff's rights under the First and/or Fifth Amendments by opening, copying, and retaining a letter Plaintiff received from Uptown People's Law Center on or around March 28, 2017.

**Count 7 -** Defendants Burgess and Hill violated Plaintiff's rights under the First and/or Fifth Amendments when they refused to let him send legal mail through the institutional mail system to United States Senator Lisa Murkowski to inform her about misconduct of federal employees on May 25, 2017.

**Count 8 -** Defendants Blythe and Hill violated Plaintiff's rights under the First and/or Fifth Amendments when they refused to send letters addressed to Rudy Davis and Debora Cochran on or around August 7-9, 2017.

**Count 9 -** Plaintiff was denied equal protection of the law under a class-of-one theory. (Doc. 1-1, pp. 4, 7).

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. The designation of these claims does not constitute an opinion regarding the merits. **Any claims that are not identified above but are encompassed within the Complaint are considered dismissed without prejudice.**

### Discussion

### Counts 1 and 2

The First Amendment protects an inmate's right to send and receive mail. *Kaufman v. McCaughtry*, 419 F.3d 678, 685 (7th Cir. 2005) (citing *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999)). However, prison officials may place restrictions on incoming and outgoing mail. *Procunier v. Martinez*, 416 U.S. 396, 413-14 (1974). Plaintiff challenges 2 of these restrictions: (1) BOP Regulation 5265.14, which along with 28 CFR §§ 540.18, .19, and .20, defines "special mail" to include correspondence with U.S. Courts, Members of the U.S. Congress, and attorneys, among others, and establishes guidelines for opening special mail in the presence of the inmate (Doc. 1, pp. 24-26); and (2) BOP Regulation 5214.02, which along with 28 CFR §§ 540.203 and .204(b), allows for the reduction or frequency and volume of telephone calls, correspondence, and contacts in the CMU. (Doc. 1, pp. 24, 27). Plaintiff claims that these regulations, referred to collectively herein as "correspondence regulations," are unconstitutional on their face and as applied to him. His claims turn on whether the correspondence regulations represent a permissible infringement on his First Amendment rights to communicate in general or in connection with legal matters.[2]

---

[2] The Court evaluates Counts 1 and 2 under the First Amendment, despite the fact that Plaintiff also refers to due process violations under the Fifth Amendment. In *Albright v. Oliver*, 510 U.S. 266, 273 (1994), the United States Supreme Court explained that "[w]hen a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, the amendment, not

5

The distinction between a facial challenge and an as-applied challenge turns only on the choice of remedy available and not on what must be pleaded in the complaint. *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 803 (7th Cir. 2016). A facial challenge usually "invites prospective relief, such as an injunction, whereas an as-applied challenge invites narrower, retrospective relief, such as damages." *Id*. Plaintiff seeks both injunctive and monetary relief, so the Court will evaluate his claims under the facial and as-applied challenge standards.

A. **Facial Challenge**

Plaintiff claims that the correspondence regulations at issue are unconstitutional on their face because they are vague. The concept of vagueness in First Amendment jurisprudence, much like the concept of overbreadth, was devised "to prevent the slightest discouragement of free speech." *Koutnik v. Brown*, 456 F.3d 777, 783 (7th Cir. 2006) (quoting *Ustrak v. Fairman*, 781 F.2d 573, 580 (7th Cir. 1986)). This doctrine has very limited relevance in the context of prison regulations because a prisoner's right to free speech is already limited. *Shaw v. Murphy*, 532 U.S. 223, 580 (7th Cir. 1986) ("[T]he constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large."). A plaintiff raising a challenge to a regulation on grounds that it is vague must show that the law is "impermissibly vague in all of its applications." *Koutnik*, 456 F.3d at 783 (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982)). The "nature of the law" impacts the Court's vagueness analysis. *Id*.

---

the more generalized notion of . . . due process must be the guide for analyzing these claims." *Id*. (internal quotation marks and citations omitted). The First Amendment provides the explicit source of constitutional protection here.

Here, Plaintiff challenges regulations which authorize prison officials to screen, view, and even limit inmate correspondence. Prison officials have great latitude when creating and enforcing regulations regarding inmate communications. *Koutnik*, 456 F.3d at 783. Officials are accorded greater flexibility because they must ensure order and safety in the prison population, while also striving to rehabilitate inmates. *Id*. The Seventh Circuit has recognized that it is impossible to foresee all situations that may pose a threat to institutional safety and security. *Id*. The case law reflects this fact. *See, e.g., Shaw v. Murphy*, 532 U.S. 223 (7th Cir. 2001). Some inmates are serving time for crimes related to their communications. Others use correspondence to pass contraband, communicate instructions for manufacturing drugs or weapons, send messages using jargon or code, or make inappropriate or threatening comments. *Id*. If these regulations are not impermissibly vague in every application, the vagueness challenge fails.

Against this backdrop, the Court will allow Plaintiff to proceed with his vagueness challenges in Counts 1 and 2. Plaintiff names Mark Inch, the Director of the Federal Bureau of Prisons in connection with this facial challenge and his related request for injunctive relief. The Court shall instruct the Clerk to add the Warden of USP-Marion in connection with the request for injunctive relief.

**B.     As Applied Challenge**

Plaintiff also asserts that BOP PS 5214.02 and 5265.14 are unconstitutional as applied to his activity. When a challenged regulation or practice impacts *incoming* mail, the Court evaluates the regulation under the standard set forth in *Turner v. Safley*, 482 U.S. 78 (1987). In *Turner*, the United States Supreme Court indicated that the primary consideration is whether a valid, rational connection exists between the restriction and a legitimate government interest. *Turner*, 482 U.S. at 89-90. A restriction on speech that fails to demonstrate this connection—

*e.g.*, because the connection between the regulation and asserted goal is "arbitrary or irrational"—fails under *Turner* regardless of the other considerations discussed herein. *See Shaw,* 532 U.S. at 229-30. The other factors relevant to the Court's analysis include the existence of alternative means of exercising the right; the impact accommodation of the asserted right would have on guards, inmates, and prison resources; and the absence of a reasonable alternative to the regulation or practice. *Id*. at 230 (citing *Turner,* 482 U.S. at 90).

Plaintiff challenges BOP PS 5214.02 and 5265.14 as applied by Mailroom Employee #3 on January 24, 2017; Mailroom Employee #1 on March 24, 2017; and Mailroom Employee #2 on March 28, 2017. These defendants allegedly screened, read, photocopied, and distributed Plaintiff's incoming mail and later cited these regulations as justification for doing so. Because Mailroom Employees ##1-3 each claimed to take action on the basis of the disputed regulations, the as-applied challenge in Counts 1 and 2 shall proceed against them at this stage.

Regulations that are used to censor an inmate's *outgoing* mail are evaluated under the standard set forth in *Procunier v. Martinez*, 416 U.S. 396, 413-14 (1974). *See also Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989) ("The implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of incoming materials."); *Koutnik*, 456 F.3d at 784 & n. 4 (affirming application of standard of review set forth in *Martinez* to regulations that impact outgoing mail). Under the *Martinez* test: (1) a regulation or practice must further an important or substantial government interest unrelated to the suppression of expression; and (2) the challenged action "must be no greater than is necessary or essential to the protection" of that interest. *Martinez*, 416 U.S. at 413.

The government interests at stake in the instant case include security, order, and rehabilitation of inmates—all of which are legitimate interests in penal institutions. The question

is whether enforcement of the regulation against Plaintiff when he attempted to send outgoing mail that was blocked by Siereveld on February 24, Burgess and Hill on May 25, and Blythe and Hill on August 7-9, 2017, was "no greater an infringement upon [his] first amendment liberties than [was] necessary to protect the . . . interest." *Koutnik*, 456 F.3d at 784 (quoting *Rios v. Lane*, 812 F.2d 1032, 1037 (7th Cir. 1987)). Plaintiff alleges that Siereveld, Burgess, Hill, and Blythe flatly refused to send his letters and later cited BOP PS 5214.02 and 5265.14. He maintains that these officials did not make their decision in furtherance of any interest in security, order, or rehabilitation. Given these allegations, the Court cannot dismiss the as applied challenge to BOP PS 5214.02 and 5265.14 in Counts 1 and 2 against Siereveld, Burgess, Hill, and Blythe, based on their application of these regulations to block Plaintiff's outgoing mail.

## Counts 3, 4, 5, 6, 7, and 8

Courts evaluate mail interference claims involving prisoner mail differently, based on the type of mail and the nature of the constitutional right at issue. Plaintiff brings his mail interference claims under the First and/or Fifth Amendments. The mail at issue includes incoming and outgoing correspondence with attorneys, a senator, the court, and other named and unnamed individuals.

Certain correspondence described in the Complaint likely qualifies as legal mail. This includes the incoming mail dated January 24 (Count 3), March 24 (Count 5), and March 28 (Count 6), which were exchanged between the plaintiff and an attorney who represents him or from whom he seeks representation. *Kaufman*, 419 F.3d at 686 (defining legal mail to include correspondence with an attorney or potential attorney). Legal mail also includes communications from the court and other agencies that contain sensitive information. *Guajardo-Palma v. Martinson*, 622 F.3d 801, 804 (7th Cir. 2010). The correspondence from the Court

9

dated January 24 (Count 3) and to a senator dated May 25 (Count 7) may also qualify as legal mail under this definition. At this early stage, the Court lacks sufficient information to categorize all other correspondence.

The First Amendment applies to communications between an inmate and an outsider. *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) (citation omitted). The Supreme Court has recognized that inmates have a First Amendment right to send and receive mail. *Kaufman*, 419 F.3d at 685-86 (citing *Rowe*, 196 F.3d at 782 (citations omitted)). However, this right does not preclude prison officials from inspecting mail to ensure that it does not contain contraband. *Kaufman*, 419 F.3d at 685-86 (citing *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974)). Legal mail "is entitled to greater protections." *Id.* (citing *Rowe*, 196 F.3d at 782). The Supreme Court has recognized that "[p]rison regulations or practices that affect a prisoner's legal mail are of particular concern because of the potential for interference with a prisoner's right of access to the courts." *Rowe*, 196 F.3d at 782 (citing *Lewis v. Casey*, 518 U.S. 343, 1996)). For this reason, claims of interference with legal mail are often brought as access to courts claims. *Guajardo-Palma*, 622 F.3d at 802 (quoting *Dreher v. Sielaff*, 636 F.2d 1141, 1143 (7th Cir. 1980)). In this context, the right at stake is the right to pursue a non-frivolous legal claim, not just the right to engage in protected speech or enrich the marketplace of ideas. *Id.* at 802 (citing *Denius v. Dunlap*, 209 F.3d 944, 954 (7th Cir. 2000)). Prison officials who engage in the regular practice of opening clearly marked legal mail outside of an inmate's presence may violate the inmate's constitutional rights, including the right to court access. *Kaufman*, 419 F.3d at 695-86 (citations omitted).

Plaintiff alleges that the following individuals opened, read, photocopied, retained, and possibly distributed his communications with potential attorneys: Mailroom Employee #3 on

January 24 (Count 3); Mailroom Employee #1 on March 24 (Count 5); and Mailroom Employee #2 on March 28 (Count 6). All of these letters were marked "Privileged Legal Mail." Even so, the defendants opened the letters outside of Plaintiff's presence. He also claims that Siereveld refused to send 6 or 7 letters on February 24 (Count 4); Burgess and Hill refused to send a letter containing sensitive information about the misconduct of federal officials to a senator on May 25 (Count 7); and Blythe and Hill would not let him send letters to two individuals on August 7-9 (Count 8).

The inadvertent or negligent opening of an occasional legal letter is not actionable. *See, e.g., Bryant v. Winston*, 750 F. Supp. 733 (E.D. Va. 1990); *Rowe*, 196 F.3d at 782. *See also Sizemore v. Wiliford*, 829 F.2d 608, 610 (7th Cir. 1987) (sporadic disruption of mail service does not violate the Constitution). A valid claim typically requires "a continuing pattern or repeated occurrences" of mail interference. *Zimmerman*, 226 F.3d at 572. Proof of a regular practice may be sufficient to demonstrate a hindrance to an inmate's legal claims. *Guajardo-Palma*, 622 F.3d at 805 (*Al-Amin v. Smith*, 511 F.3d 1317, 1334 (11th Cir. 2008); *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006); *Davis v. Goord*, 320 F.3d 346, 351-52 (2d Cir. 2003)). In the Complaint, Plaintiff characterizes the mail interference as a regular "practice" that is actionable under *Guajardo-Palma*. He also maintains that he was intimidated by the practice. *See Guajardo-Palma*, 622 F.3d at 806. Given these allegations, the Court cannot dismiss these claims at screening.

Accordingly, the Court shall allow the following claims to proceed: Count 3 against Mailroom Employee #3; Count 4 against Siereveld; Count 5 against Mailroom Employee #1; Count 6 against Mailroom Employee #2; Count 7 against Burgess and Hill; and Count 8 against Blythe and Hill.

**Count 9**

A claim for the denial of equal protection based on a "class-of-one" theory generally requires the plaintiff to demonstrate that: (1) he has been intentionally treated differently from others who are similarly situated; and (2) there is no rational basis for different treatment. *See Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 601 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff does not allege that he was subjected to intentional discrimination or that his treatment was different from that of other inmates. He relies entirely on conclusory allegations in support of this claim. This is not enough to satisfy *Twombly*. Count 9 fails to state a claim upon which relief may be granted and shall be dismissed without prejudice.

## Identification of Unknown Defendants

Plaintiff shall be allowed to proceed with his claims in Counts 1, 2, 3, 5, and 6 against Mailroom Employees ##1-3. However, these individuals must be identified with particularity before service of the Complaint can be made on them. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of the individuals are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of the individuals. *Rodriguez*, 577 F.3d at 832. In this case, the Warden of USP-Marion shall be added as a defendant for purposes of responding to discovery aimed at identifying these individuals. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of these unknown defendants are discovered, Plaintiff shall file a motion to substitute the newly identified defendants in place of the generic designations in the case caption and throughout the Complaint.

## Pending Motion

Plaintiff filed a Motion for Preliminary Injunction (Doc. 2), which shall be **REFERRED** to a United States Magistrate Judge for handling.

## Disposition

The Clerk is **DIRECTED** to **ADD** the Warden of the United States Penitentiary – Marion, Illinois (in his or her official capacity only) as a defendant in CM/ECF. This defendant is responsible for carrying out any injunctive relief that is ordered and for timely responding to any discovery aimed at identifying Defendants Unknown Mailroom Employees ##1-3.

**IT IS HEREBY ORDERED** that the facial challenge to the regulations in **COUNTS 1** and **2** is subject to further review against Defendants **MARK INCH**. The Warden of USP-Marion is also named in connection with Plaintiff's request for injunctive relief in Count 1. This claim is **DISMISSED** without prejudice against all other defendants for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that the as-applied challenge to the regulations in **COUNTS 1** and **2** survives screening and is subject to further review against Defendants **GARY BURGESS, KATHY HILL, KATERINE SIEREVELD, RICHARD BLYTHE**, and **MAILROOM EMPLOYEES ##1-3**. This claim is **DISMISSED** without prejudice against all other defendants for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **COUNT 3** is subject to further review against Defendant **MAILROOM EMPLOYEE #3**; **COUNT 4** is subject to further review against Defendant **KATERINE SIEREVELD**; **COUNT 5** is subject to further review against Defendant **MAILROOM EMPLOYEE #1**; **COUNT 6** is subject to further review against Defendant **MAILROOM EMPLOYEE #2**; **COUNT 7** is subject to further review against Defendant

**KATHY HILL** and **GARY BURGESS**; and **COUNT 8** is subject to further review against Defendants **RICHARD BLYTHE** and **KATHY HILL**. These claims are **DISMISSED** without prejudice against all other defendants for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **COUNT 9** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

With regard to **COUNTS 1, 2, 3, 4, 5, 6, 7,** and **8**, Plaintiff has neither sought nor been granted leave to proceed *in forma pauperis* in this action, and the Court will not automatically appoint the United States Marshal to effect service of process upon Defendants **WARDEN OF USP-MARION (official capacity only), MARK INCH, GARY BURGESS, KATHY HILL, KATERINE SIEREVELD, RICHARD BLYTHE**, and **MAILROOM EMPLOYEES ##1-3** (once identified). However, if Plaintiff desires to request the appointment of the United States Marshal to serve process on these defendants, Plaintiff shall file a Motion for Service of Process at Government Expense, within 35 days of the date of entry of this order (on or before **April 19, 2018**). The Clerk of Court is **DIRECTED** to mail to Plaintiff the Court's Pro Se Litigant Guide, containing forms and instructions for filing said motion.

If Plaintiff does not timely file a Motion for Service of Process at Government Expense, it shall be Plaintiff's responsibility to have Defendants **WARDEN OF USP-MARION (official capacity only), MARK INCH, GARY BURGESS, KATHY HILL, KATERINE SIEREVELD, RICHARD BLYTHE**, and **MAILROOM EMPLOYEES ##1-3** (once identified) served with a summons and copy of the Complaint (Doc. 1) pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that only a non-party may serve a summons. *See* FED. R. CIV. P. 4(c)(2).

If Plaintiff requests the appointment of the United States Marshal, the Clerk of Court shall prepare a summons and copies of the Complaint (Doc. 1) and this Memorandum and Order for each defendant, and shall forward the same to the United States Marshal for service. If Plaintiff does not file a Motion for Service of Process at Government Expense within 35 days as ordered, the Clerk shall then prepare a summons for each defendant, and shall forward the summonses and sufficient copies of the Complaint and this Memorandum and Order to Plaintiff so that he may have defendants served.

Plaintiff is **ORDERED** to serve upon defendants or, if an appearance has been entered by counsel, upon that attorney, a copy of every pleading or other document submitted for consideration by this Court. Plaintiff shall include with the original paper to be filed a certificate stating the date that a true and correct copy of the document was mailed to each defendant or defendant's counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

**IT IS FURTHER ORDERED** that, with respect to a defendant who no longer can be found at the work address provided by Plaintiff, if the United States Marshal is appointed to serve process pursuant to a motion by Plaintiff, the employer shall furnish the United States Marshal with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for effecting service of process. Any documentation of the address shall be retained only by the Marshal. Address information shall not be maintained in the court file or disclosed by the Marshal.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a **United States Magistrate Judge** for further pre-trial proceedings, including a plan aimed at identifying the unknown defendants ("Mailroom Employees ##1-3) and the Motion for Preliminary Injunction (Doc. 2).

Further, this entire matter is **REFERRED** to a **United States Magistrate Judge** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 15, 2018**

s/J. Phil Gilbert
**District Judge**
**United States District Court**
